TRINA A. HIGGINS, United States Attorney (7349)
AMANDA A. BERNDT, Assistant United States Attorney (15370)
TIFFANY M. ROMNEY, Assistant United States Attorney (6131)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
(801) 524-5682
amanda.berndt@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| BREEZE AVIATION GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL MEDIATION BOARD, <br><br> Defendant. | **MOTION TO DISMISS** <br><br> Case No. 2:22-cv-514-DBB <br><br> Judge David B. Barlow |

### INTRODUCTION

The National Mediation Board (NMB or Board) is empowered to investigate and adjudicate union representation disputes for employees of railroads and airlines.[1] Judicial review of decisions made by the Board is "one of the narrowest known to the law."[2] Such review is confined to cases in which the complaint establishes a "gross violation" of the Railway Labor Act, 45 U.S.C. §§ 151–181 (RLA).[3]

---

[1]   45 U.S.C. §§ 152, Ninth; 181.

[2]   *Kiamichi R. Co., Inc. v. Nat'l Mediation Bd.*, 986 F.2d 1341, 1343 (10th Cir. 1993) (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Trans World Airlines, Inc.*, 839 F.2d 809, 811 (D.C. Cir. 1989)).

[3]   *Kiamichi R. Co., Inc.*, 986 F.2d at 1344.

Despite this presumption of non-reviewability, plaintiff Breeze Aviation Group asks this Court to overturn the Board's decision to certify the Air Line Pilots Association (ALPA) to represent Breeze's pilots. Breeze alleges that the Board violated the RLA when it "grossly erred" by (1) refusing to allow certain employees—who had not completed training to become pilots—to vote in the union election, and (2) not extending the eligibility deadline to allow its trainees to vote.[4] Breeze seeks declaratory and injunctive relief setting aside the union election and mandating a new election in which Breeze's trainees would be eligible to vote.[5] Because Breeze's complaint fails to establish that the Board committed any violation of the RLA, let alone a gross violation, dismissal is appropriate pursuant to FED. R. CIV. P. 12(b)(1).

## LEGAL FRAMEWORK

Congress enacted the RLA to protect the rights of employees of rail carriers—and later employees of airline carriers—to join a union and to "provide for the prompt and orderly settlement of all disputes" between employers and unions.[6] Under the RLA, employees have the right to organize and collectively bargain through representatives of their choice.[7] The RLA also established the National Mediation Board and vested it with exclusive jurisdiction to oversee all representation elections, certify union representation following an election, and investigate and resolve disputes regarding union representation.[8]

---

[4]  Compl. ¶¶ 50, 54–56 (Docket No. 2).

[5]  *Id*. ¶¶ 54–56.

[6]  45 U.S.C. §§ 151a, 181.

[7]  45 U.S.C. § 152, Fourth; *see also Pinnacle Airlines, Inc. v. Nat'l Mediation Bd*., No. 03–1642 (ESH), 2003 WL 23156630, at *2 (D.D.C. Nov. 5, 2003) (unpublished).

[8]  45 U.S.C. §§ 152, Ninth, 154; *Switchman's Union v. Nat'l Mediation Bd.*, 320 U.S. 297, 300 (1943).

The RLA prescribes that the "majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this Act."[9] The RLA defines "employee" as "every person in the service of a carrier . . . who performs any work defined as that of an employee," and provides that further interpretation is left to the discretion of the Board.[10] What constitutes a "majority of any craft or class" is also left to the discretion of the Board.[11] In other words, when a dispute arises as to the scope of the craft or class of employees seeking representation or which employees are eligible to vote in an election, the Board's role is to investigate and ultimately define the universe of eligible employees.[12]

The Board has promulgated regulations that set forth the requirements and procedures for conducting an election.[13] The Board has also published its Representation Manual, which provides general procedural guidance to the Board's staff.[14]

---

[9] 45 U.S.C. § 152, Fourth.

[10] 45 U.S.C. § 151, Fifth; *see also* 45 U.S.C. § 181 (further defining "employee" to include "every air pilot or other person who performs any work as an employee").

[11] *See Kiamichi R. Co.*, 986 F.2d at 1343 ("The power to resolve disputes concerning class or craft designations belongs to the NMB.").

[12] 45 U.S.C. § 152, Ninth (vesting the Board with authority to "designate who may participate in the election and establish the rules to govern the election"); *Switchman's Union*, 320 U.S. at 301 (the RLA "gives the Mediation Board the power to resolve controversies . . . and as an incident thereto to determine what is the appropriate craft or class in which the election should be held.").

[13] 29 C.F.R. §§ 1201.1, *et seq*.

[14] Representation Manual, *available at* https://nmb.gov/NMB_Application/wp-content/uploads/2022/01/Rep-Manual-2022-1.pdf (last visited October 15, 2022).

3

To begin the representation process, a union seeking to represent a craft or class of employees must file a representation application requesting that the Board conduct an election.[15] In support of its application, the union must demonstrate a showing of interest of at least 50 percent of the craft or class.[16] It normally does this by submitting union authorization cards signed by employees in the craft or class, which the Board then compares to a list of potential eligible voters provided by the employer-carrier.[17] An employee is eligible to vote in an election if they are performing work in service of the carrier on the eligibility cut-off date, which is typically the last day of the last pay period preceding the date of the application.[18] The Board has further defined eligible employees as only those "individuals working regularly in the craft or class on and after the cut-off date."[19] When a dispute arises as to eligibility, the Board investigates the dispute and determines who may participate in the election.[20] If the union has established the requisite "showing of interest," the Board conducts an election by secret ballot and certifies the results based on a majority of the votes cast.[21]

### FACTUAL BACKGROUND

ALPA filed an application for a representation election among Breeze's pilots on April 6, 2022.[22] On April 11, Breeze provided the Board a list that included 137 employees it asserted

---

[15] 29 C.F.R. § 1203.2.

[16] 45 U.S.C. § 152, Twelfth; 29 C.F.R. § 1206.2.

[17] 29 C.F.R. § 1203.2; Representation Manual § 3.6.

[18] Representation Manual §§ 2.3, 2.4.

[19] *Id.* § 9.2.

[20] 29 C.F.R. § 1202.7.

[21] 29 C.F.R. § 1202.4.

[22] Compl. ¶ 29.

were eligible to vote as of the cut-off date of March 31, 2022.[23] ALPA thereafter challenged the eligibility of 71 of the 137 employees on the grounds that those employees had not completed training and were thus not "working regularly in the craft or class" as of the cut-off date.[24] Breeze conceded that the 71 individuals had not completed their training but argued that they should be considered eligible because Breeze expected them to be working regularly as pilots by September 30, 2022.[25] Alternatively, Breeze asked the Board to extend the cut-off date for voter eligibility to September 30, 2022.[26]

On June 8, 2022, the Board declined to find the trainee pilots eligible to vote and determined that a modification of the cut-off date was unwarranted.[27] The Board thus authorized and conducted an election among eligible voters and ultimately certified ALPA as the union representative for Breeze's pilots.[28]

## STANDARD OF REVIEW

Under FED. R. CIV. P. 12(b)(1), this Court should "presume no jurisdiction exists."[29] The burden of establishing subject-matter jurisdiction "rests upon the party asserting jurisdiction."[30] To establish jurisdiction, a plaintiff "must 'allege in his pleading the facts essential to show

---

[23] *Id.* ¶ 30.

[24] *Id.* ¶ 31.

[25] *Breeze Aviation Group, Inc.*, 49 NMB 112, 115–16 (2022).

[26] *Id.* at 116; Compl. ¶ 35.

[27] *Breeze Aviation*, 49 NMB 116–18.

[28] *Breeze Aviation Group, Inc.*, 49 NMB 137 (2022).

[29] *United States ex rel. Precision Co. v. Koch Indus.*, 971 F.2d 548, 551 (10th Cir. 1992).

[30] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

jurisdiction' and 'must support [those facts] by competent proof.'"[31] Where, as here, a party makes "a facial attack on the complaint's allegations as to subject matter jurisdiction," a court should accept the factual allegations in the complaint as true.[32] But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[33]

## ARGUMENT

Federal courts generally lack jurisdiction to review the Board's certification decisions.[34] However, under a narrow judicially-created doctrine,[35] a court may exercise its jurisdiction to review election certifications "only upon a showing on the face of the pleadings that the certification decision was a gross violation of the [RLA] or that it violated the constitutional rights of an employer, employee, or Union."[36]

"In examining a challenge predicated on the exception [to the presumption of non-reviewability of Board decisions] for a gross violation of the RLA," courts should "limit the

---

[31] *Koch Indus.*, 971 F.2d at 551 (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

[32] *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[34] *See U.S. Airways, Inc. v. Nat'l Mediation Bd.*, 177 F.3d 985, 989 n.2 (D.C. Cir. 1999); *Prof'l Cabin Crew Ass'n v. Nat'l Mediation Bd.*, 872 F.2d 456, 459 (D.C. Cir. 1989) ("Judicial review of NMB decisions is extraordinarily limited.").

[35] The genesis of this doctrine—the Supreme Court's holding in *Switchman's Union*—predates the enactment of the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq*. Since the enactment of the APA, though, courts have refused to apply the broader judicial-review standard available under the APA to certification decisions by the Board. *See U.S. Airways, Inc.*, 177 F.3d at 989 n.2; *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1250 (2d Cir. 1992) (refusing to review Board's actions under the APA because those actions are "committed to agency discretion by law") (citation omitted).

[36] *Kiamichi R. Co.*, 986 F.2d at 1343–44.

inquiry to specific statutory language, without extension to arguing in terms of policy and broad generalities."[37] Unless this "peek at the merits" reveals "an error that is obvious on the face of the papers," the court lacks jurisdiction.[38]

Breeze does not allege that any action of the Board violated its constitutional rights; rather, it asserts only that the challenged actions—not allowing trainee-pilots to vote in the election and declining to modify the cut-off date for eligibility—constitute gross violations of the RLA. As courts have consistently held, however, such decisions are squarely within the Board's statutory authority. Breeze's complaint thus fails to establish a gross violation of the RLA, and the court lacks jurisdiction over the complaint.

### A. Breeze's trainee pilots were not "employees" as defined in the RLA and thus were not eligible to vote in the union election.

Breeze first argues that the Board grossly violated the RLA by not allowing Breeze's trainee pilots—none of whom had completed their training or were qualified to fly for Breeze—to vote in the union election. But Breeze's argument is contrary to the RLA, the Board's regulations, and case law.

The RLA defines "employee" as "every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee . . . ."[39] The RLA specifically limits airline carrier "employee" status and the scope of RLA protection to "every air pilot or other person who performs any work as an employee or subordinate official of [a] carrier or carriers, subject to its

---

[37] *U.S. Airways*, 177 F.3d at 989–90.

[38] *Horizon Air Indus., Inc. v. Nat'l Mediation Bd.*, 232 F.3d 1126, 1132 (9th Cir. 2000) (internal quotations omitted).

[39] 45 U.S.C. § 151, Fifth.

7

or their continuing authority to supervise and direct the manner of rendition of his service."[40] Thus, to be considered an airline "employee" under §§ 151 and 181, one must have "performed services for the employer under the employer's supervision."[41]

In *United Airlines*, the Seventh Circuit held that "unless a person has performed services for the employer under that employer's supervision, he is not an employee under the RLA."[42] "[T]rainees . . . simply do not fall within the RLA's definition of employee." *Id*. at 913. This is the case for pilots because until their training is complete, trainees have not "performed the work ordinarily discharged" by pilots.[43]

Consistent with the plain language of the RLA the authorities cited above, and the Board's own precedent, the Board has uniformly excluded trainees from union elections, as it did here.[44] As Breeze concedes, its trainees had neither completed their training nor flown for Breeze.[45] Accordingly, those pilots were not employees for purposes of the RLA and were therefore not eligible to vote in the union election. That Breeze paid salaries to the trainees, or otherwise viewed those trainees as "integral" to their business operations, is irrelevant.[46]

---

[40] 45 U.S.C. § 181.

[41] *ALPA v. United Airlines, Inc.*, 802 F.2d 886, 913 (7th Cir. 1986).

[42] *Id*. at 913.

[43] *Eastern Air Lines, Inc. v. ALPA*, 920 F.2d 722, 726 (11th Cir. 1990) (trainee pilots were not "employees" under the RLA despite being on the payroll and the seniority list).

[44] *See Breeze Aviation*, 49 NMB 116 (collecting cases).

[45] Compl. ¶ 25.

[46] *Indep. Fed'n of Flight Attendants v. TWA*, 819 F.2d 839, 846 (8th Cir. 1987), *rev'd on other grounds sub nom. TWA v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426 (1989) ("The RLA does not extend its coverage based on the employer's labelling of persons as employees or the payment of salary.")

## B. The Board's decision to enforce the prescribed cut-off date was a proper exercise of its discretionary authority under the RLA.

Breeze's second claim—that the Board grossly erred by not modifying the cut-off date—is equally flawed because the RLA grants the Board the sole discretion "to designate who may participate in the election and establish the rules to govern the election."[47] This includes the discretion to set or modify a cut-off date for determining eligibility.[48]

Breeze admits that the Board set the cut-off date in accordance with its Representation Manual.[49] The Board grants extensions of the cut-off date only in "very rare" cases involving "unusual or extraordinary circumstances," such as where the Board's investigation is significantly delayed or where a carrier experiences substantial employee turnover.[50] Here, the Board ruled that Breeze's request for a lengthy six-month delay in the vote—simply to allow trainees to qualify as employees—did not constitute an extraordinary circumstance warranting the extension.[51] The Board's decision was consistent with its rules and precedents and thus was an appropriate exercise of its discretionary authority under the RLA.

---

[47] 45 U.S.C. § 152, Ninth.

[48] *See British Airways Bd. v. Nat'l Mediation Bd.*, 685 F.2d 52, 56 (2d Cir. 1982) (holding that the Board's setting of a cut-off date was not "in excess of delegated powers or contrary to specific statutory directions."); *USAir, Inc. v. Nat'l Mediation Bd.*, 711 F. Supp. 285, 292 (E.D. Va. 1989) (the Board's selection of cut-off dates "is an unreviewable exercise of its discretion to determine voter eligibility");, *aff'd*, 894 F.2d 403 (4th Cir. 1989); *LSG Lufthansa Servs. v. Nat'l Mediation Bd.*, 116 F. Supp. 2d 181, 190 (D.D.C. 2000).

[49] *See* Compl. ¶¶ 16, 30.

[50] *See Breeze Aviation Group*, 49 NMB at 117.

[51] *Id.* at 118.

## CONCLUSION

For the foregoing reasons, the Board respectfully requests that this Court dismiss Breeze's complaint without prejudice.

Dated this 17th day of October, 2022.

                                              TRINA A. HIGGINS
                                              United States Attorney

                                              */s/ Amanda A. Berndt*
                                              AMANDA A. BERNDT
                                              Assistant United States Attorney