ERIK STRINDBERG (Utah Bar No. 4154)
**STRINDBERG SCHOLNICK BIRCH**
**HALLAM HARSTAD THORNE**
40 South 600 East
Salt Lake City, Utah 84102
(t) 801.359.4169
(f) 801.359.4313
email: erik@utahjobjustice.com

JOSHUA J. ELLISON (*pro hac vice*)
MATTHEW HARRIS (*pro hac vice*)
Air Line Pilots Association, International
7950 Jones branch Drive, Suite 400S
McLean, VA 22102
(t) 703.481.2447
email: Joshua.Ellison@alpa.org
Matt.Harris@alpa.org

*Attorneys for Defendant-Intervenor Air Line Pilots Association, International*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BREEZE AVIATION GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL MEDIATION BOARD,<br><br>Defendant,<br><br>and<br><br>AIR LINE PILOTS ASSOCIATION, INT'L,<br><br>Defendant-Intervenor. | **MOTION TO DISMISS**<br><br>Case No. 2:22-cv-00514-DBB-JCB<br><br>District Judge David Barlow<br><br>Magistrate Judge Jared C. Bennett |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant-Intervenor Air Line Pilots Association, International respectfully moves to dismiss Plaintiff's Complaint for the reasons stated below.

**PRELIMINARY STATEMENT**

Breeze Aviation Group ("Breeze") has challenged a routine representation election conducted by the National Mediation Board ("NMB" or the "Board"), certifying the Air Line Pilots Association, International ("ALPA") as the exclusive representative of the Breeze pilots under the Railway Labor Act ("RLA") (45 U.S.C. § 151 *et seq.*). Breeze complains that it was "unfair" for the NMB to apply its decades-old requirement for voter eligibility in representation elections — that only those who have completed training and worked in revenue service for the carrier are eligible to vote in a union election because only those persons are defined as employees under the RLA. We show below that the Board's eligibility requirement, which follows uniform court decisions on this issue, is consistent with the language of the RLA. Breeze's effort to have this Court carve out an exception at its behest should be rejected.

The RLA gives the NMB exclusive authority to conduct representation elections and determine who may vote in them. That authority is subject to only the most limited judicial review, to determine whether the NMB's conduct was a "gross violation" of the RLA. If not, federal courts lack jurisdiction to second-guess NMB decisions. There was no RLA violation of any kind here. The NMB simply determined, as it has in dozens of cases, that individuals whom Breeze had hired to become pilots in the future, but had not yet entered into revenue service, were not eligible to vote in that election. The NMB also declined Breeze's invitation to deviate from its policy with respect to establishing the date of voter eligibility, because Breeze's status as

a start-up airline was not the type of extraordinary circumstance that would justify deviation from the Board's settled requirement.

Breeze's Complaint does not allege conduct by the NMB that suggests any violation of the RLA, and certainly not a gross one. It should be dismissed accordingly.

## BACKGROUND

Plaintiff Breeze is an airline and a common carrier by air pursuant to the RLA. *See* RLA § 201, 45 U.S.C. § 181; Complaint [Dkt. No. 2] ("Compl.") ¶ 2. Defendant NMB is an independent United States government agency established by the RLA and that is responsible, *inter alia*, for conducting airline and railway employee representation elections to determine whether employees of air and rail carriers will be represented by a labor organization. RLA § 2, Fourth & Ninth, 45 U.S.C. § 152; RLA § 4, 45 U.S.C. § 154. Finally, Defendant-Intervenor ALPA is an unincorporated membership association organized for the purposes and objectives of a labor union with its headquarters at 7950 Jones Branch Drive, Suite 400S, McLean, Virginia 22102. ALPA currently represents approximately 66,000 commercial airline pilots throughout the United States and Canada.

The RLA authorizes collective representation and bargaining of employees in a "craft or class" of employees. RLA § 2, Fourth, 45 U.S.C. § 152. On April 6, 2022, ALPA filed an application with the NMB seeking a representation election for a craft or class of Breeze employees employed as Fight Deck Crewmembers, *i.e.*, pilots. Compl. ¶ 29.[1] On April 11, per

[1] The Board's Motion to Dismiss [Dkt. No. 28] ("NMB Mot.") explains the procedure by which it conducts representation elections and followed in this instance, and ALPA will not repeat them

the Board's direction, Breeze provided the Board a list that included 137 employees it asserted were eligible to vote as of the cut-off date of March 31, 2022. *Id.* ¶ 30. Under the Board's Representation Manual, "[a]ll individuals working regularly in the craft or class on and after the cut-off date are eligible to vote in an NMP representation election." *NMB Representation Manual* § 9.2, NMB (rev. Jan. 12, 2022), https://nmb.gov/NMB_Application/wp-content/uploads/2022/01/Rep-Manual-2022-1.pdf. ALPA challenged the eligibility of 71 of those 137 employees (the "Trainee Pilots") on the grounds that they were not "working regularly" as pilots as of the cut-off date. Compl. ¶ 31. In particular, none of the Trainee Pilots could lawfully work as pilots under FAA rules because none had completed necessary training, which includes ground instruction and an "Initial Operating Experience," (or "IOE"), where a pilot operates under the close supervision of a specially FAA-certified pilot called a "check airman."[2]

Breeze conceded that the Trainee Pilots had not completed their training but argued that they should nonetheless be considered eligible because Breeze expected them to be working regularly as pilots by September 30, 2022. *Id.* ¶ 31. Alternatively, Breeze asked the Board to extend the cut-off date for voter eligibility to September 30, 2022. *Id.* ¶ 35.

---

here, except to note that when a union submits a petition for certification supported by a showing of interest of at least 50% of employees in the craft or class, the Board sets a "cut-off" date, generally the last payroll date before the petition was submitted, determines which employees were in the craft or class as of that date, and conducts an election among those employees. *See* NMB Mot. at 4.

[2] *See* 14 C.F.R. § 121.434(a) ("No certificate holder may use a person nor may any person serve as a required crewmember of an airplane unless the person has satisfactorily completed . . . the operating experience, operating cycles, and the line operating flight time for consolidation of knowledge and skills, required by this section[.]").

On June 8, 2022, the Board noted that it has "consistently held that eligibility to vote requires the performance of line work in the craft or class as of the cut-off date." *Id.*, Ex. 1 at 5 [Dkt. No. 2-1]. It found the Trainee Pilots were not in the craft of class of Flight Deck Crewmembers because Breeze conceded none had performed line flight duties by the cut-off date. *Id*. In this respect, the Board concluded that the fact that Breeze paid the trainees was irrelevant to the question of whether they were employees eligible to vote under the Act. *Id*. The Board also determined that a modification of the cut-off date was unwarranted, because "unusual or extraordinary circumstances" were not present. *Id.* The Board then conducted an election, and on August 11, 2022, it announced that a majority of the eligible pilots voted to be represented by ALPA and certified ALPA as the representative for all Breeze Flight Deck Crewmembers pursuant to the RLA. *Id.*, Ex. 2 [Dkt. 2-2]. This litigation followed.

## ARGUMENT

As the NMB explained in its motion to dismiss, federal courts lack jurisdiction to review the Board's decisions regarding certification unless the pleadings, on their face, show that there was a "gross violation" of the RLA. *US Airways, Inc. v. NMB*, 177 F.3d 985, 989 (D.C. Cir. 1999); NMB Mot. at 6. The Supreme Court has explained that NMB decisions are generally unreviewable because Congress "did not select the courts to resolve" these disputes and therefore there should be "no dragging out of the controversy into other tribunals of law." *Gen. Comm. v. Mo.-Kan.-Tex. R.R.*, 320 U.S. 323, 336 (1943); *Switchmen's Union v. NMB*, 320 U.S. 297, 305 (1943). "Congress's intent that the NMB retain broad discretion over matters arising under the RLA allow[s] the Court merely a 'peek at the merits' to determine whether the NMB committed a gross violation of the statute, and review of NMB decisions is one of the narrowest known to

law." *Cont'l Airlines, Inc. v. NMB.*, 957 F.2d 911 (Table), 1992 WL 50390, at *1 (D.C. Cir. 1992) (internal citations omitted).

This command is clear and explicit with respect to election eligibility, as RLA Section 2, Ninth, authorizes the Board to determine who is eligible to vote in a representation election: "the Board shall designate who may participate in the election and establish the rules to govern the election." RLA § 2, Ninth, 45 U.S.C. § 152. "[I]t is the NMB, not the federal judiciary, that determines voter eligibility in elections held pursuant to the RLA." *Virgin Atl. Airways, Ltd. v. NMB*, 956 F.2d 1245, 1250 (2d Cir. 1992). Far from a "gross violation" of the RLA, the Board's decisions excluding the Trainee Pilots from the list of eligible voters and refusing to move the eligibility cut-off date was consistent with the RLA as interpreted by every federal court to consider this issue and well within the broad discretion the RLA affords the NMB in making decisions regarding employee representation.

## I. NMB'S DETERMINATION THAT BREEZE'S TRAINEE PILOTS WERE NOT "EMPLOYEES IN THE CRAFT AND CLASS" OF FLIGHT DECK CREW MEMBERS WAS CONSISTENT WITH THE RLA, NOT A GROSS VIOLATION OF IT.

Breeze's assertion that the NMB's decision not to allow Trainee Pilots to vote in the union election constitutes a "gross violation" of the RLA, Compl. ¶ 1, is contrary to the plain text of the statute and longstanding and consistent case law. As noted above, Congress granted the NMB authority to make determinations as to who is eligible to vote in representation elections. The requirement the NMB applied here in making that determination — that a pilot must be engaged in actual revenue flying, rather than sitting in a classroom for initial training — comports with the language of the statute, has been established for decades, and furthers the

RLA's purpose in ensuring employees have a free and fair choice in representation elections without undue or improper influence from management.

**a. *Only Employees in the Relevant Craft or Class as Determined by the NMB are Eligible to Participate in RLA Representation Elections.***

The RLA uses the term "employee" in two places relevant here. First, it defines an employee of an air carrier as "every air pilot or other person who *performs any work as an employee* or subordinate official of such carrier or carriers, subject to its or their continuing authority to supervise and direct the manner of rendition of his service." RLA § 201, 45 U.S.C. § 181 (emphasis added). This provision mirrors RLA Section 1, Fifth (45 U.SC. § 151), which defines employees similarly, but with reference to orders of the Surface Transportation Board, which has jurisdiction over railroads but not air carriers.

Section 201 of the RLA makes the remainder of Chapter I of the RLA applicable to air carriers, and Section 2, Fifth defines who is eligible to be represented by a union and, if so, which one: "the majority of *any craft or class of employee*s shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter." RLA § 2, Fourth, 45 U.S.C. § 152 (emphasis added).

Thus, to be eligible to vote, an individual must be an "employee in the craft and class" at issue, here flight deck crewmembers, and, under controlling Tenth Circuit precedent and overwhelming authority from other federal courts, "[t]he power to resolve disputes concerning class or craft designations for a representation election belongs to the NMB . . . and not to the federal courts." *Kiamichi R. Co. v. NMB*, 986 F.2d 1341, 1343 (10th Cir. 1993). *See also Rose v. Bhd. of Ry. & S. S. Clerks, Freight Handlers, Exp. & Station Emps.*, 181 F.2d 944, 946 (4th Cir. 1950) ("[T]he effect of this statute [the RLA] was to vest in the Mediation Board exclusive

jurisdiction over the certification of bargaining agents, the determination of bargaining units and the classification of employees for the purposes of bargaining…. not subject to review by the courts.") (citing *Switchmen's Union*, 320 U.S. at 297)); *see also Gen. Comm.*, 320 U.S. at 336; *Brotherhood of Ry. Clerks v. Atl. Coast Line R.R.*, 201 F.2d 36, 38-39 (4th Cir. 1953); *Int'l Ass'n of Machinists v. Alitalia Airlines*, 600 F. Supp. 268, 270 n.2, 275 (S.D.N.Y. 1984), *aff'd*, 753 F.2d 3, 118 (2d Cir. 1985).

**b. *Trainee Pilots are Not in the Craft and Class Because they Do Not Perform the Work of the Craft or Class.***

Trainee Pilots are not "employees in the craft or class" of pilots under the RLA for a simple reason: until they complete training and are engaged in revenue flying, they are not performing pilot service and indeed are not even legally qualified to do so.[3] Courts of appeals that have addressed this issue have unanimously concluded that airline trainees, including pilot trainees, are not employees in the craft or class under the RLA on precisely this basis.

In *ALPA v. United Airlines*,[4] the Seventh Circuit considered whether 500 salaried pilot trainees who refused work during a pilot strike were employees under the RLA such that United was required to displace strike replacement pilots it later hired in favor of the trainees at the strike's conclusion. The court noted that "the district court refused to find that the [trainees] were employees during their training period," and also determined that they were not employees as of the day they were to report to work to begin regular revenue flying because "[t]hese pilots never performed any work for [the airline] nor did they ever submit to [the airline's] supervision

---

[3] *See* fn. 2, *supra.*

[4] 802 F.2d 886 (7th Cir. 1986).

of them in their work." *Id.* at 911. The court held that "trainees and applicants simply do not fall within the RLA's definition of employee." *Id.* at 913; *see also Rakestraw v. United Airlines, Inc.*, 981 F.2d 1524, 1527-28 (7th Cir. 1992).

Four years later, in *Eastern Air Lines, Inc. v. ALPA*,[5] the Eleventh Circuit also held that pilot trainees are not "employees" in the pilot craft and class under the RLA. The issue there was the mirror image of the issue in *United* — whether Eastern was required to replace trainees with sympathy-striking pilots at the conclusion of the strike, which in turn hinged on whether the trainees were employees within the meaning of the RLA. The court, following *United* and another RLA trainee case, *Indep. Fed'n of Flight Attendants v. Trans World Airlines, Inc.*[6] ("*Trans World,"* discussed further *infra*) held that they were not because they (i) "were not qualified to perform the work Eastern's pilots ordinarily discharged" since, like the Trainee Pilots at issue here, they had still to complete a series of examinations, IOE, and obtain an FAA certificate; and (ii) "were not actually performing the work ordinarily discharged by the former strikers" — regular revenue flying. *Eastern Air Lines*, 920 F.2d at 727-28. The *Eastern Air Lines* court also rejected the point that Breeze urges here — that trainee pilots are RLA employees in the craft or class because Breeze pays them a salary and they are on its pilot seniority list — holding "[w]e do not consider these unilateral actions to be dispositive of whether Eastern's trainees are permanent employees." *Id.* at 728.

---

[5] 920 F.2d 722, 726 (11th Cir. 1990).

[6] 819 F.2d 839, 842 (8th Cir. 1987) *rev'd on other grounds*, 489 U.S. 426 (1989).

And, as noted, courts have held that trainees are not employees under the RLA with respect to crafts and classes other than pilots, namely flight attendants. In *Trans World*, which also addressed whether an air carrier could replace striking employees with trainees, the court held that "RLA coverage is determined by the *work the person performs* under supervision of the employer" and "[t]he trainees in question, although hired by TWA, never performed any services for TWA under its supervision prior to the Union's offer to return to work. Thus, they cannot be considered employees within the meaning of the RLA." 819 F.2d at 845-46 (emphasis in original).

There is no contrary authority.

The Board's election eligibility requirement for pilots and cabin crew has uniformly followed judicial construction of the RLA's definition of employee status for many years. In *Horizon Air*, 14 NMB 406 (1987), relying on the Seventh Circuit's decision in *United* and the Eighth Circuit's decision in *Trans World*, the Board held that trainees who have not completed IOE and entered into revenue service are not eligible to vote in a representation election. It has consistently applied that requirement in the succeeding thirty-five years. *See Simmons Airlines*, 15 NMB 228, 230 (1988); *America W. Airlines*, 18 NMB 140 (1991); *United Air Lines*, 18 NMB 181 (1991); *American Airlines*, 26 NMB 106, 107–109 (1998); *Gulfstream Int'l Airlines*, 27 NMB 65, 67 (1999) ("for the Board to find trainees eligible, the Board must be presented with evidence that the individuals in question have performed line functions in the craft or class as of the cut-off date") (quoting *Simmons Airlines*); *Executive Jet Aviation*, 28 NMB 467, 468 (2001) (individuals ineligible to vote as they had not completed their IOE and entered into service as of the cut-off date).

The principle of these cases is simple: trainees are not employees in the craft or class because, unless and until they complete training and begin revenue flying, as they are not — and cannot — "perform any work as an employee" of the carrier. Far from the "gross violation" of the RLA that Breeze must show, the NMB's determination that the craft or class excludes trainees was entirely consistent with the statute and multiple appellate decisions and grounded in the reality of federally regulated air carrier pilot service. Breeze's self-serving complaints of "unfair[ness]" and "disenfranchise[ment]" are hardly sufficient justifications for the Court to depart from the statutory language as interpreted by several other courts and disturb the long-held understanding of aviation industry stakeholders. Compl. ¶ 1.

## II. THE NMB'S DECISION NOT TO MOVE THE CUT-OFF DATE WAS A PROPER EXERCISE OF ITS DISCRETIONARY AUTHORITY UNDER THE RLA.

Breeze's claim that the Board's refusal to extend the cut-off date by six months is just as unavailing. The Board's Motion explains thoroughly and completely that it has discretion under the RLA to determine who may participate in the election and the procedures governing it, including the discretion to set or modify cut-off dates, which is not a reviewable decision. NMB Mot. at 9. ALPA will not burden the Court with repetition of those arguments and authorities here but points out that permitting Breeze to select its own cut-off date — delaying it past the normal course by *months* — for the sole purpose of allowing trainees to qualify as employees under the RLA would permit carriers to use the pretext of "rapid growth" to manipulate the eligible voter rolls and undermine free and fair choice in representation elections. The NMB properly denied Breeze's blatant effort to game the system.

* * *

Breeze offers no persuasive reason why this Court should depart from every judicial decision on point and overturn clear Board precedent that employees, carriers, and unions have relied on for decades. Breeze does not (and cannot) identify a single "gross violation" of the NMB. This case is simple: there was a dispute between Breeze and ALPA regarding the eligibility of voters, the NMB investigated as required by the statute, and issued a decision in accordance with a requirement it has applied consistently for over thirty years and accords with the decision of every federal court to address this issue. The Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, ALPA respectfully requests that this Court dismiss Breeze's complaint with prejudice.

Dated this 11th day of November, 2022.

*/s/ Joshua J. Ellison*
Joshua J. Ellison
*Attorney for Defendant-Intervenor*
*Air Line Pilots Association, International*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 11, 2022, a true and correct copy of the foregoing Motions to Dismiss was served via the CM/ECF system on all parties of record.

*/s/ Joshua J. Ellison*
Joshua J. Ellison