ERIK STRINDBERG (Utah Bar No. 4154)
**STRINDBERG SCHOLNICK BIRCH**
**HALLAM HARSTAD THORNE**
40 South 600 East
Salt Lake City, Utah 84102
(t) 801.359.4169
(f) 801.359.4313
email: erik@utahjobjustice.com

JOSHUA J. ELLISON (*pro hac vice*)
MATTHEW HARRIS (*pro hac vice*)
Air Line Pilots Association, International
7950 Jones Branch Drive, Suite 400S
McLean, VA 22102
(t) 703.481.2447
email: Joshua.Ellison@alpa.org
      Matt.Harris@alpa.org

*Attorneys for Defendant-Intervenor Air Line Pilots Association, International*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BREEZE AVIATION GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL MEDIATION BOARD, <br><br> Defendant, <br><br> and <br><br> AIR LINE PILOTS ASSOCIATION, INT'L, <br><br> Defendant-Intervenor. | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** <br><br> Case No. 2:22-cv-00514-DBB-JCB <br><br> District Judge David Barlow <br><br> Magistrate Judge Jared C. Bennett |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the Court's

October 28, 2022, Order Granting Stipulated Motion for Briefing Schedule on Motions to

Dismiss [Dkt. 30], Defendant-Intervenor Air Line Pilots Association, International respectfully submits this reply memorandum of law in further support of its November 11, 2022, motion to dismiss the Complaint [Dkt. 33] (the "Motion").

## PRELIMINARY STATEMENT

Breeze Aviation Group, Inc.'s ("Breeze") December 16, 2022, Combined Memorandum in Opposition to Defendants' Motions to Dismiss [Dkt. 37] ("Opposition" or "Opp.") repeats the same fundamental mistake made in its Complaint [Dkt. 1] ("Compl."). Breeze assumes, without argumentation or citation to relevant authorities, that future pilots in training—who have never flown a flight for Breeze, have not completed required FAA training to be eligible to fly for Breeze, or even set foot in the cockpit of a Breeze aircraft—were members of the craft or class of Flight Deck Crewmembers (*i.e.* pilots) under the Railway Labor Act. 45 U.S.C. § 151 *et seq*. It is not in dispute that the RLA provides that a majority of employees in the craft or class are entitled to select a representative in an election, but this case is not about that. Rather, ALPA and the National Mediation Board ("NMB" or "Board") demonstrated in their motions [Dkts. 33 & 28, respectively] that the NMB had exclusive authority and discretion to make the threshold determination that potential future pilots in training ("Trainee Pilots"), who were not flying revenue flights and were not qualified to do so when ALPA filed its representation position, were not in the craft or class of pilots when ALPA filed its representation petition and thus were not part of the group of employees to which the majority rule applied.

Breeze's Opposition simply ignores the critical distinction between employees generally and employees in the craft or class and argues at length that the Trainee Pilots were employees. But Breeze does not allege or argue that the Trainee Pilots were in the pilot craft or class before

they completed training and began flying passenger revenue flights. Breeze thus fails to plead that the Board committed a "gross violation" of the RLA, which it concedes it must for the Court to have jurisdiction. Therefore, the Complaint should be dismissed.

I. **THE RLA'S PLAIN LANGUAGE DOES NOT MANDATE INCLUSION OF TRAINEES IN THE FLIGHT DECK CREW MEMBER CRAFT.**

Breeze concedes that the Court has jurisdiction to review the NMB's eligibility determination only if it was a "gross violation" of the RLA. Opp. 13. It argues that the NMB did so because the RLA states that the "majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for purposes of this chapter." *Id.* (citing RLA Section 2, Fourth, 45 U.S.C. § 152, Fourth). Breeze thus argues that by excluding the seventy-one Trainee Pilots, the Board disregarded this statutory language.

    A. **The RLA Requires a Majority of Employees <u>in the Craft or Class</u> Choose Their Representative, not a Majority of All Employees.**

Breeze's argument in opposition to ALPA and the NMB's motions is merely a reiteration of the question-begging theory of the case asserted in its Complaint. The dispute in this case is not, as Breeze says, whether a majority of the craft or class has the right to choose a collective bargaining representative, but which employees *comprise the craft or class* of Flight Deck Crewmembers in the first place. As ALPA explained, the Board and every federal court to examine the question has concluded that trainees who have not performed revenue service are not in the craft or class as employees who perform that service, regardless of the title that the employer unilaterally assigns or how they are compensated. Mot. 8-9. Breeze's argument simply conflates status as an employee generally with belonging to the craft or class of flight deck crewmembers.

3

Indeed, Breeze focuses on a single word—the RLA's definition of "employee"—but conveniently ignores that the mandate for majority representation is for employees *in the same craft or class*. Opp. 15 (citing RLA Section 201, 45 U.S.C. § 181). It is well-settled that "[u]nder the Railway Labor Act only the NMB (or the committee designated by it) has the power to make craft or class determinations." *UNA Chapter Flight Eng'rs' Int'l Ass'n, AFL-CIO v. NMB,* 294 F.2d 905, 908 (D.C. Cir. 1961) (collecting cases).

Instead of addressing the key issue of craft or class determination, Breeze mischaracterizes the Board's decision to exclude the seventy-one Trainee Pilots from the election as having "modif[ied] the RLA's definition of 'employee.'" Opp. 19. The Board's decision did nothing to modify the RLA's existing definition of "employee"; in fact, the decision lists the terms and conditions of the Trainee Pilots' employment with Breeze. Compl. Ex. 1 at 116 [Dkt. 2-1]. The Board ruled that "eligibility to vote requires the performance of line work in the craft or class as of the cut-off date" and excluded the Trainee Pilots because "Breeze has presented no evidence that any of the Trainee Pilots have completed their IOE [Initial Operating Experience] and performed line work in the Flight Deck Crew Members craft or class." *Id.* It also noted that the Trainee Pilots had not completed FAA-required training and therefore "they are not qualified to perform line work for the Carrier, and it is that performance of line work in the craft or class as of the cut-off date that determines eligibility." *Id.* at 117. The Board thus did not find that the Trainee Pilots were not "employees," as Breeze asserts, Opp. 18, but rather that they had not performed the

work of the craft or class of flight deck crewmembers and therefore were not employees who were in that craft or class eligible to vote in the representation election.  Compl. Ex. 1 at 117.[1]

The Board did not "substitute" its definition of "employee" for Congress's, but correctly interpreted the RLA to require that an employee have performed the *work of the craft or class* as of the cut-off date.  And Breeze does not and cannot dispute that binding precedent in this Circuit—including the very case it relies on for the "gross violation" standard—is that "[t]he power to resolve disputes concerning class or craft designations for a representation election belongs to the NMB … and not to the federal courts." *Kiamichi R. Co. v. NMB*, 986 F.2d 1341, 1343 (10th Cir. 1993) (cited in Opp. 13).  Breeze simply ignores this point, and the other authorities ALPA cited in its motion.  *See Rose v. Bhd. of Ry. & S. S. Clerks, Freight Handlers, Exp. & Station Emps.*, 181 F.2d 944, 946 (4th Cir. 1950) ("[T]he effect of this statute [the RLA] was to vest in the Mediation Board exclusive jurisdiction over the certification of bargaining agents, the determination of bargaining units and the classification of employees for the purposes of bargaining…. not subject to review by the courts.") (citing *Switchmen's Union of N. Am. v. NMB*, 320 U.S. 297, 297 (1943)); *see also Gen. Comm of Adjustment of Bhd. of Locomotive Eng'rs for Mo.-Kan-Tex. R.R. v. Mo.-Kan.-Tex. R.R.*, 320 U.S. 323, 336 (1943); *Bhd. of Ry. Clerks v. Atl. Coast Line R.R.*, 201 F.2d 36, 38-39 (4th Cir. 1953); *Int'l Ass'n of Machinists v. Alitalia Airlines*, 600 F. Supp. 268, 270 n.2, 275 (S.D.N.Y. 1984), *aff'd*, 753 F.2d 3 (2d Cir.

---

[1] Breeze asserts that ALPA "admitted…that holding the election without including [the Trainee Pilots] or modifying the eligibility cut-off date would mean that less than 50% of the craft or class of Breeze pilots would make the representation decision for all 137 Breeze pilots." Opp. 9; Compl. ¶ 38.  While factual allegations of a complaint must be accepted as true for purposes of a motion to dismiss, ALPA never made any such admission.

1985). Breeze would have had the Board (and now this Court) simply ignore the textual requirement that eligible employees be in the craft or class, and the Board was well within its statutory authority to decline to do so. Indeed, Breeze's position that anyone who is an employee of a carrier is entitled to vote in a representation election implies that all employees of an air carrier would be eligible to vote in a representation election, and, if the union won, would all belong to the same union. This would be absurd and turn labor relations in the commercial airline industry upside down.

Breeze's cited authorities on pages 16 and 17 of its Opposition, like its overall theory of this case, are misplaced because they concern the Board's authority to define "employee," not its exclusive discretion to make craft or class determinations. *See Air Transp. Ass'n. of Am., Inc. v. NMB*, 719 F. Supp. 2d 26, 35 (D.D.C. 2010), *aff'd*, 663 F.3d 476 (D.C. Cir. 2011) (NMB's discretion to determine class or craft representatives "includes the authority to reasonably construe the language of the statute."). Similarly unavailing is Breeze's reliance on *CSX Transportation, Inc. v. NMB*.[2] That case concerned the NMB's authority to order the consolidation of private boards of arbitration established between a rail carrier and one of its unions and had nothing whatsoever to do with craft or class determinations or representation elections. Breeze also relies on the "'who, what, when, and how' laundry list" phrase quoted in *CSX Transportation* to argue that the Board lacks any leeway to interpret the RLA, but that phrase comes from *Railway Labor Executives' Association v. NMB*,[3] which addressed whether

---

[2] No. 04-cv-0611-RWR, 2005 WL 2297554, at *8 (D.D.C. Aug. 29, 2005) (unpublished) (cited at Opp. 18).

[3] 29 F.3d 655, 665 (D.C. Cir.), *amended*, 38 F.3d 1224 (D.C. Cir. 1994).

the Board could investigate representation disputes on its initiative or that of a carrier, or could do so only when an employee or union invoked its procedures, and had nothing to do with craft or class determinations.

Finally, Breeze argues that the Trainee Pilots were "employees" because they were issued employee identification cards, were paid, were subject to Breeze's direction with respect to their training, and other irrelevant factors. Opp. 19. This again completely ignores that the Trainee Pilots were (admittedly) not performing the work of the craft or class, revenue flying, and that it is the employee's actual duties, not unilateral employer actions or labels, that determines craft membership. See Eastern Air Lines, Inc. v. ALPA, 920 F.2d 722, 726-27 (11th Cir. 1990).

**B. United Air Lines, Eastern Air Lines, and Trans World Airlines are Relevant and Persuasive.**

Breeze then argues that ALPA v. United Air Lines, Inc.,[4] and Eastern Air Lines, Inc. v. ALPA[5] are not persuasive on the eligibility of employees-in-training to vote in representation elections concerning the craft or class they are being trained to join. First, while Breeze is obviously correct that both cases are from outside the Tenth Circuit, Breeze cites absolutely no authority whatsoever holding or even suggesting that trainees are in the craft or class. Second, the key point to draw from *United Air Lines* is that an employee who did not perform any work for the carrier is not an employee under the RLA and so, too, someone who has not done the work performed by the flight deck crewmember craft—flying airplanes, not receiving classroom or simulator instruction—is not in that craft unless and until they perform that work. Similarly,

---

[4] 802 F.2d 886, 913 (7th Cir. 1986).
[5] 920 F.2d 722, 726 (11th Cir. 1990).

in *Eastern Air Lines*, the court ruled that replacement pilots who "had begun flying regular revenue flights" before strikers offered to return to work had the same status under the RLA as the returning strikers, but those pilots still in training were not permanent employees under the RLA because they had not become FAA-qualified and were "not actually performing the work ordinarily discharged by the former strikers." 920 F.2d at 728. Similarly unavailing is Breeze's attempt to distinguish *Independent Federation of Flight Attendants v. Trans World Airlines, Inc.*,[6] where the Eighth Circuit similarly held that flight attendants in training had not performed the work of flight attendants performing in-flight duties, *i.e.* the work of the flight attendant craft. The Supreme Court reversed *Trans World* only insofar as the Eighth Circuit had held that TWA was obligated to displace less-senior flight attendants who crossed a picket line during the strike with more senior attendants who returned to work after the strike ended and said nothing whatsoever about the status of flight attendant trainees. *Trans World Airlines v. Indep. Fed. of Flight Attendants*, 489 U.S. 426, 432 (1989). All three of these cases clearly stand for the undisturbed proposition that merely attending training prior to being released to perform actual revenue flying is not the work of the craft or class, and thus support the Board's decision that Trainee Pilots were ineligible.

      Breeze is also unavailing in its attempts to distinguish the Board's holdings in a series of cases involving flight attendants on the grounds that pilot training is "vastly different" from flight attendant training because it takes longer and is subject to more extensive regulatory requirements, without explaining why that should matter. Opp. 24-25. If anything, the facts that

---

[6] 819 F.2d 839, 842 (8th Cir. 1987), *rev'd on other grounds*, 489 U.S. 426 (1989).

FAA-mandated training for pilots is longer and more onerous than for flight attendants only highlights how different pilot training is than the work of the pilot craft and affirms that trainees are not yet in that craft.

II. THE BOARD DID NOT GROSSLY VIOLATE THE RLA BY DECLINING TO MOVE THE CUT-OFF DATE.

Breeze's alternative argument that the Board violated the RLA by following its rules regarding the cut-off-date rather than making an exception in this case suffers from the same flaw as its main argument: it assumes that trainees are part of the craft or class and ignores that the Board has discretion to make craft-or-class determinations. No court has ever ordered the Board to change a cut-off date or found its cut-off-date determination grossly violated the RLA. All authority is to the contrary. *See, e.g.* Brit. Airways Bd. v. NMB, 685 F.2d 52, 56 (2d Cir. 1982) ("[s]electing a cutoff date… [was a] decision[] well within [Board's] discretion"); USAir, Inc. v. NMB, 711 F. Supp. 285, 292 (E.D. Va.), *aff'd*, 894 F.2d 403 (4th Cir. 1989) ("NMB's selection of cut-off dates is an unreviewable exercise of its discretion"); LSG Lufthansa Servs. v. NMB, 116 F. Supp. 2d 181, 190 (D.D.C. 2000) ("Court is without jurisdiction to review the certification" based on alleged error in setting cut-off date) (internal quotation omitted); Ind. R.R. v. NMB, No. IP 98-518-C H/G, 1999 WL 778591, at *7 (S.D. Ind. Mar. 26, 1999) ("[T]he Board has the authority to set a cut-off date to run an election even though that decision may exclude some employees from the vote[.]"); Air Can. v. NMB, 478 F. Supp. 615, 617 (S.D.N.Y. 1979) (no violation in setting cut-off date a year prior to election). The Board's discretion to establish election rules, including cut-off dates, dooms Breeze's argument.

Moreover, even if courts were empowered to review the Board's cut-off-date decisions and strictly scrutinize whether they comported with past decisions, which they are not, here there

was no "substantial change in the composition of the craft or class" between the initial cut-off date and the modified date due to intervening litigation, unlike the cases Breeze cites. *See* USAir, 10 NMB 495, 495-96 (1983) (over two years between initial cut-off date and completion of investigation); Piedmont Airlines, 9 NMB 41, 45 (1981) (almost five-year difference).

Breeze argues the Board should have moved the cut-off-date in anticipation of a *speculated future change* in the craft or class composition as Trainee Pilots complete training, become qualified, and enter the craft or class. The only case where the Board did so was Compass Airlines,[7] but there the number of flight attendants had increased from 20 to 70 in the space of three months, between the initial cut-off date and the election date, which meant significantly more than a majority of the craft or class would be unable to vote. Here, Breeze asked to significantly move the goal posts in its favor by requesting a *six-month* extension of the cut-off date based on the *hypothetical* future size of the pilot craft or class. These facts and circumstances do not justify such manipulation of the process and an unprecedented judicial intrusion into the Board's prerogative to conduct representation elections.

## CONCLUSION

For the foregoing reasons, and those set forth in ALPA and the Board's motions, ALPA respectfully requests that this Court dismiss Breeze's complaint with prejudice.

Dated this 13th day of January 2023.

/s/ Joshua J. Ellison
Joshua J. Ellison
*Attorney for Defendant-Intervenor*
*Air Line Pilots Association, International*

---

[7] 35 NMB 14, 21 (2007).

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2023, a true and correct copy of the forgoing Motion to Dismiss was served via the CM/ECF system on all parties of record.

*/s/ Joshua J. Ellison*
Joshua J. Ellison
