TRINA A. HIGGINS, United States Attorney (7349)
AMANDA A. BERNDT, Assistant United States Attorney (15370)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
(801) 524-5682
amanda.berndt@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| BREEZE AVIATION GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL MEDIATION BOARD, <br><br> Defendant. | **REPLY IN SUPPORT OF NATIONAL MEDIATION BOARD'S MOTION TO DISMISS** <br><br> Case No. 2:22-cv-514-DBB <br><br> Judge David B. Barlow |

## INTRODUCTION

Breeze Aviation Group asks this Court to overturn a decision by the National Mediation Board (NMB or Board) to certify the Air Line Pilots Association (ALPA) to represent Breeze's pilots.[1] The Board and Intervenor-Defendant ALPA each moved to dismiss the complaint.[2] Because Breeze has failed to establish any violation of the Railway Labor Act (RLA), this Court lacks jurisdiction to review the Board's decision and should dismiss Breeze's complaint pursuant to FED. R. CIV. P. 12(b)(1).[3]

---

[1] *See generally* Compl. (Docket No. 2).

[2] Docket Nos. 28, 33.

[3] *Kiamichi R. Co., Inc. v. Nat'l Mediation Bd.*, 986 F.2d 1341, 1344 (10th Cir. 1993).

## ARGUMENT

Judicial review of decisions made by the Board is "one of the narrowest known to the law."[4] A court may exercise its jurisdiction to review election certifications "only upon a showing on the face of the pleadings that the certification decision was a gross violation of the Railway Labor Act[5] or that it violated the constitutional rights of an employer, employee, or Union."[6] In examining whether a complaint establishes a gross violation of the RLA, a court should limit its "inquiry to specific statutory language, without extension to arguing in terms of policy and broad generalities."[7] Unless this "peek at the merits" reveals "an error that is obvious on the face of the papers," the court lacks jurisdiction.[8]

The extent of judicial deference to Board decisions is illustrated by the paucity of cases in which courts have found a gross violation of the RLA. Courts have done so only where the Board has acted in direct contravention of the plain language of the statute. For example, in *Railway Labor Execs.' Ass'n v. Nat'l Mediation Bd. (RLEA)*,[9] a group of rail labor unions sued to challenge the Board's adoption of "Merger Procedures" designed to address representation disputes brought on by mergers and acquisitions of railroad companies.[10] Among other things,

---

[4] *Id.* at 1343 (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Trans World Airlines, Inc.*, 839 F.2d 809, 811 (D.C. Cir. 1989)).

[5] 45 U.S.C §§ 151–81.

[6] *Kiamichi R. Co.*, 986 F.2d at 1343–44.

[7] *U.S. Airways, Inc. v. Nat'l Mediation Bd.*, 177 F.3d 985, 989–90 (D.C. Cir. 1999).

[8] *Horizon Air Indus., Inc. v. Nat'l Mediation Bd.*, 232 F.3d 1126, 1132 (9th Cir. 2000) (internal quotations omitted).

[9] 29 F.3d 655 (D.C. Cir. 1994) (en banc) ("*RLEA*"), *cert. denied*, 514 U.S. 1032 (1995).

[10] *Id.* at 659–60.

the Merger Procedures provided that representation proceedings could be initiated not only by railroad employees, but also by the railroad company or the Board.[11] The unions alleged that this provision violated the RLA's express terms.[12] The district court dismissed the unions' complaint on the ground that the court lacked jurisdiction to review the Board's election-related decisions.[13] On appeal, a divided panel of the D.C. Circuit reversed.[14] The court then agreed to hear the case *en banc*.[15]

A majority of the full court again reversed.[16] The court relied on the plain language of Section 2, Ninth of the RLA, which provides that "[i]f any dispute shall arise *among a carrier's employees*" regarding their representatives, the Board "shall . . ., *upon request of either party* to the dispute," investigate the dispute, hold an election, and certify to the employer the name or names of the persons or entities that have been authorized to represent the employees.[17] The court held that the statute "makes perfectly clear that, as used in Section 2, Ninth, the term 'parties' includes neither carriers nor the Board itself."[18] Thus, the Board exceeded its statutory authority when it adopted procedures allowing a carrier or the Board to request an investigation in the case of mergers and acquisitions.[19] The court concluded that the Board's disregard of the

---

[11]   *Id.*

[12]   *Id.*

[13]   *Id.* at 658–59.

[14]   *Id.* at 660.

[15]   *Id.*

[16]   *Id.* at 661.

[17]   *Id.* at 664–65 (quoting 45 U.S.C. § 152, Ninth).

[18]   *Id.* at 665.

[19]   *Id.* at 669.

statute's express terms was a "gross violation" of the RLA, which established jurisdiction for the district court to review the Board's actions.[20]

In the present case, by contrast, Breeze has failed to identify any violation by the Board of an explicit directive in the RLA. Breeze argues that the Board's certification of eligible employees was inconsistent with the RLA's definition of "employee."[21] But the Board has not disputed the trainee pilots' status as Breeze employees. Breeze's dispute is instead with the Board's determination that trainee pilots were not part of the "craft or class" of pilots eligible to vote in the election. The RLA, however, does not define "craft or class." Instead, "[t]he power to resolve disputes concerning class or craft designations belongs to the NMB."[22]

Breeze has cited no precedent for its argument that the court has jurisdiction to override the Board's certification of the craft or class of employees eligible to vote in a representation election. Nor have we found any such precedent in this circuit or others. To the contrary, every court that has confronted a challenge to the Board's exercise of its discretionary authority—particularly related to its determinations regarding craft or class of employees or eligibility of voters in an election—have found that jurisdiction is lacking.[23] Breeze has failed to establish a

---

[20] *Id.* at 662. *See also CSX Transp., Inc. v. Nat'l Mediation Bd.*, No. Civ.A. 04-0611, 2005 WL 2297554 (D.D.C. Aug. 29, 2005) (finding a gross violation of the RLA where the Board consolidated 31 arbitration boards, in direct contravention of the statute's explicit reservation to carriers and unions of the authority to establish and assign cases to the arbitration boards).

[21] *See* Pl.'s Resp. Mem. at 18–19 (Docket No. 37).

[22] *Kiamichi R. Co.*, 986 F.2d at 1343.

[23] *See, e.g.*, *Kiamichi R. Co.*, 986 F.2d at 1343 ("The power to resolve disputes concerning class or craft designations for a representation election belongs to the NMB, however, and not to the federal courts."); *Am. West Airlines, Inc. v. Nat'l Mediation Bd.*, 119 F.3d 772, 776 (9th Cir. 1997) (power to decide who is eligible to vote in an election "is within the sole jurisdiction of the NMB"); *Pro. Cabin Crew Ass'n v. Nat'l Mediation Bd.*, 872 F.2d 456, 462 (D.C. Cir. 1989) ("In short, application of the *Switchmen's* doctrine compels us to conclude that in the absence of a

4

gross violation of the RLA, depriving this court of jurisdiction to review the Board's challenged decisions.

As set out in the Board's opening brief, the Board did exactly what the RLA requires it to do: it investigated and resolved a dispute related to union representation among Breeze's employees by designating the scope of the craft or class of employees eligible to vote in the union election.[24] When presented with ALPA's representation application, the Board investigated a dispute as to the craft or class of employees eligible to vote in the election, did so in accordance with its regulations and long-standing precedent, certified its decision in writing, and thereafter conducted an election among Breeze's eligible pilots.[25]

Breeze also argues that the Board grossly violated the RLA's "majority participation requirement" by declining to exercise its jurisdiction to modify the eligibility cut-off date.[26] But again, the RLA gives the Board exclusive authority to "establish the rules to govern the election."[27] And nowhere in the RLA is it required that the Board allow for a carrier's rapid

---

gross statutory violation, the resolution of the meaning of 'employee'—like its definition of 'craft'—finds its last terminal point with the Board."); cf. *Brotherhood of Ry. & S. S. Clerks v. Ass'n for the Benefit of Non-Contract Employees*, 380 U.S. 650, 666–67 (1965) (refusing to exercise jurisdiction over constitutional challenge to sufficiency of Board investigation regarding the scope of the craft or class of eligible employees where "Board performed its statutory duty to conduct an investigation and designate the craft or class in which the election should be held and . . . did so in a manner satisfying any possible constitutional requirements that might exist.")

[24] 45 U.S.C. § 152, Ninth (requiring the Board to investigate representation disputes among carrier employees, to "designate who may participate in the election and establish the rules to govern the election," and conduct an election for representation among the craft or class of eligible employees).

[25] *See* NMB Mot. at 7–8; ALPA Mot. at 7–11; ALPA Reply Mem. at 3–9 (Docket No. 38).

[26] *See* Pl.'s Resp. Mem. at 25–28.

[27] 45 U.S.C. § 152, Ninth.

growth as a basis for modifying those rules.[28] Indeed, as courts have repeatedly and consistently held, the establishment of procedures governing the election are "entirely [the Board's] affair."[29]

Breeze points to prior decisions by the Board wherein the Board found that "extraordinary or unusual circumstances" warranted a modification of the cut-off date and argues that its rapid growth qualifies as an extraordinary circumstance.[30] But a disagreement with the Board's rationale—or exercise of its discretion—does not cross the "lofty threshold" of establishing, on the face of the pleadings, a gross violation of the RLA.[31] Moreover, as pointed out by ALPA, even when the Board has modified a cut-off date, it has never extended a cut-off date beyond the date of the Board's decision, as Breeze requested.[32]

---

[28] *British Airways Bd. v. Nat'l Mediation Bd.*, 685 F.2d 52, 56 (2d Cir. 1982); *LSG Lufthansa Servs. v. Nat'l Mediation Bd.*, 116 F. Supp. 2d 181, 190 (D.D.C. 2000) (finding that Board did not grossly violate RLA by retaining original cut-off date for rerun election even when doing so left only 58 percent of the original craft eligible); *see also Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1251 (2d Cir. 1992) ("Nothing in the RLA requires the NMB to stay elections pending resolution of a dispute over an allegedly wrongful discharge.").

[29] *British Airways Bd.*, 685 F.2d at 56.

[30] *See* Pl.'s Resp. Mem. at 26–27.

[31] *Pro. Cabin Crew Ass'n*, 872 F.2d at 460.

[32] ALPA Reply Mem. at 10; *see also Compass Airlines*, 35 NMB 14 (2007). In *Compass*, the union filed its application on August 22, 2007. *Id.* Compass thereafter submitted a list of employees to the Board, but also challenged the Board's jurisdiction on the grounds that it did not yet employ a "substantial and representative complement" of employees. *Id.* This argument was based on case law under the National Labor Relations Act. *Id.* at 15, 18–19. Because it was a novel and complicated issue, the Board's decision resolving the dispute was not issued until November 29, 2007. *Id.* at 21. And in the intervening three months, Compass had a significant number of additional flight attendants who had graduated from training and entered service. *Id.* The Board thus modified the date by approximately two months, to November 1, 2007. *Id.* In the present case, the original cut-off date was March 31, 2022. *Breeze Aviation*, 49 NMB 112, 113 (2022). On May 3, 2022, Breeze asked the Board to extend the cut-off date to September 30, 2022—almost five months *into the future*—to allow its trainee pilots to graduate. Exercising its broad discretion, the Board refused to grant this unprecedented request. *See* 49 NMB at 117–18.

## CONCLUSION

WHEREFORE, for the foregoing reasons, and those stated in ALPA's reply brief, which is incorporated expressly herein, the Board requests that this matter be dismissed.

Dated this 13th day of January, 2023.

                                            TRINA A. HIGGINS
                                            United States Attorney

                                            */s/ Amanda A. Berndt*
                                            AMANDA A. BERNDT
                                            Assistant United States Attorney